### A03A0530. HOBBS v. THE STATE.
(579 SE2d 50)

BLACKBURN, Presiding Judge.

Following a bench trial, Daniel Franklin Hobbs appeals his conviction for DUI pursuant to OCGA § 40-6-391 (a) (5), contending that the trial court should have suppressed the evidence of his intoxication because: (1) the roadblock at which he was stopped was illegal; (2) his implied consent notice was given improperly; and (3) his assent to breath testing was taken without first being informed of his *Miranda* rights. For the reasons set forth below, we affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe

the evidence most favorably to the upholding of the trial court's findings and judgment.

*Stanford v. State.*[1]

Viewed in this light, the record shows that, in the early morning hours of August 4, 2001, Sergeant Robert Savage, a supervising officer, authorized a roadblock for the express purpose of checking driver's licenses and proof of insurance. As Hobbs approached the roadblock, he was stopped by Sergeant Savage, who immediately smelled the odor of an alcoholic beverage on Hobbs. At the time of the stop, Hobbs had a Florida driver's license, not a Georgia one. After Hobbs unsatisfactorily performed certain field sobriety tests, Sergeant Savage placed him under arrest and read the appropriate Georgia implied consent rights to him. Hobbs agreed to an Intoxilyzer 5000 breath test, which showed that his blood alcohol concentration was 0.118.

1. Hobbs contends that the evidence of his intoxication should have been suppressed because the roadblock at which he was stopped was illegal. We disagree.

> A roadblock is satisfactory where the decision to implement the roadblock was made by supervisory personnel rather than the officers in the field; all vehicles are stopped as opposed to random vehicle stops; the delay to motorists is minimal; the roadblock operation is well identified as a police checkpoint; and the "screening" officer's training and experience [are] sufficient to qualify him to make an initial determination as to which motorists should be given field tests for intoxication.

*LaFontaine v. State.*[2] Relying upon *City of Indianapolis v. Edmond*,[3] this Court modified the first of the *LaFontaine* criteria to further require a showing by the State that the roadblock program was implemented at the programmatic level for a legitimate primary purpose, i.e., proof that the roadblock was ordered by a supervisor and implemented to ensure roadway safety rather than as a constitutionally impermissible pretext aimed at discovering general evidence of ordinary crime. *Baker v. State.*[4]

The roadblock in this case meets all of these criteria. Sergeant Savage, the supervising officer, authorized the roadblock for the

---

[1] *Stanford v. State*, 251 Ga. App. 87, 88-89 (1) (553 SE2d 622) (2001).

[2] *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).

[3] *City of Indianapolis v. Edmond*, 531 U. S. 32 (121 SC 447, 148 LE2d 333) (2000).

[4] *Baker v. State*, 252 Ga. App. 695, 701 (1) (556 SE2d 892) (2001) (whole court, Pope, P. J., Andrews, P. J., and Eldridge, J., dissenting), cert. denied, 252 Ga. App. 905 (2002).

legitimate purpose of checking licenses and insurance. All vehicles were generally stopped; however, to avoid undue delays, some cars were appropriately waved through to avoid unreasonable backups in the flow of traffic. See *Gamble v. State*[5] (potential hazard from traffic backup justified officers' conduct in temporarily halting roadblock). The delay to motorists was minimal, and the roadblock was appropriately marked by cones, flashing lights, and reflective vests. It is undisputed that the officers conducting the roadblock had sufficient training and experience.

Hobbs contends, nonetheless, that there was insufficient evidence of record to show that Sergeant Savage was a supervising officer, not merely a field officer, because he was the officer who ultimately stopped Hobbs at the scene. The record reflects, however, that Sergeant Savage testified that, at the roadblocks he authorizes, he goes to the location to supervise the other officers and that he takes no direct role unless the other officers are tied up with other motorists. In addition, both Sergeant Savage and another officer testified that, for purposes of the roadblock in question, Sergeant Savage was the supervising officer. Viewed in the light most favorable to the trial court's ruling on Hobbs' motion to suppress, this evidence shows that Sergeant Savage, as a supervising officer, properly made the decision to implement the roadblock at a programmatic level and that he went to the scene to act as a supervisor, not a field officer.

Accordingly, the roadblock in this case was legally constituted, and this enumeration lacks merit.

2. Hobbs contends that he was misled by the reading of the Georgia implied consent notice to believe that, unless he submitted to the breathalyzer test, his Florida license would be suspended. We have previously dealt with this issue in a manner adverse to Hobbs' argument. "[Hobbs] does not contend that the implied consent warning the officer read to him was not correct, but rather, that it was misleading. . . . The proper implied consent warning as enacted by the legislature was read to [Hobbs] without error." *Wofford v. State.*[6] This enumeration, therefore, must fail.

3. Finally, Hobbs argues that his breathalyzer test results should have been suppressed because he was not informed of his *Miranda* rights prior to notice of implied consent. Again, we have previously ruled adversely to Hobbs' argument. *Miranda* warnings are not constitutionally necessary before an officer may request a blood or urine test under the implied consent laws. *Norred v. State.*[7]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

---

[5] *Gamble v. State*, 223 Ga. App. 653, 655 (2) (478 SE2d 455) (1996).

[6] *Wofford v. State*, 234 Ga. App. 316, 318 (6) (506 SE2d 656) (1998).

[7] *Norred v. State*, 253 Ga. App. 379 (1) (559 SE2d 125) (2002).

DECIDED FEBRUARY 19, 2003 —
RECONSIDERATION DENIED MARCH 10, 2003.

*Paul S. Weiner*, for appellant.
*Charles A. Spahos*, Solicitor-General, *Lydia M. Ferguson*, Assistant Solicitor-General, for appellee.