**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 11, 2013**

# In the Court of Appeals of Georgia

A12A1785. JOHNSON v. THE STATE.

MCFADDEN, Judge.

Joseph Johnson was charged with driving under the influence of alcohol. He filed a motion to suppress evidence, which the trial court denied. Johnson then opted for a stipulated bench trial at which the trial court found him guilty of the charged offense and, because it was Johnson's second DUI offense, imposed a 12-month sentence that included service of 10 days in jail. Johnson appeals from the judgment of conviction, challenging the denial of his motion to suppress. But contrary to Johnson's claims, the record shows that the decision to implement the roadblock at which he was stopped had been properly made by a supervisor, a search warrant affidavit did establish probable cause and the seizure of his blood pursuant to the warrant was lawful. Accordingly, we affirm.

"In reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them." (Citation omitted.) *Lewis v. State*, 317 Ga. App. 391 (730 SE2d 757) (2012).

So construed, the evidence shows that at approximately 2:15 a.m., on April 30, 2011, Johnson was driving a Ford Explorer when he was stopped at a roadblock in Douglas County where officers were checking drivers' licenses and sobriety. Officers noticed that Johnson had a strong odor of alcohol about him. A deputy sheriff then asked Johnson to perform field sobriety tests, and Johnson agreed to be evaluated. During the evaluations, the deputy observed several signs of intoxication and Johnson admitted that he had consumed at least two alcoholic beverages. The deputy placed Johnson under arrest and read him the implied consent law, but Johnson refused to submit to a state-administered chemical test. Approximately two hours later, the deputy applied for and obtained a search warrant for a sample of Johnson's blood. Shortly after that, at approximately 4:52 a.m., the deputy, with the assistance of a state-qualified phlebotomist, executed the warrant and obtained two vials of

2

Johnson's blood. The blood was subsequently tested by the Georgia Bureau of Investigations and those test results showed a blood-alcohol concentration of 0.125.

1. *The roadblock.*

Johnson claims that the roadblock at which he was stopped was unconstitutional because it was conducted by field officers with unfettered discretion. We disagree.

> For a police roadblock to satisfy the Fourth Amendment, the State must show that (1) the decision to implement the roadblock was made by supervisory personnel at the programmatic level, rather than officers in the field, for a legitimate primary purpose; (2) all vehicles, rather than random vehicles, are stopped; (3) the delay to motorists is minimal; (4) the roadblock is well identified as a police checkpoint; and (5) the screening officer has adequate training to make an initial determination as to which motorists should be given field sobriety tests.

(Citation and punctuation omitted.) *Gonzalez v. State*, 289 Ga. App. 549, 550 (657 SE2d 617) (2008). See also *LaFontaine v. State*, 269 Ga. 251, 253 (3) (497 SE2d 367) (1998).

Here, only the first factor is contested, but contrary to Johnson's claim, the evidence shows that the decision to implement the roadblock was properly made by a supervisor. Sergeant David Martin gave unrefuted testimony that he is a unit supervisor, that he has been authorized by the sheriff and department policy to

3

establish roadblocks, that he made the decision to implement this particular roadblock, and that he was the supervisor on the scene who set up the checkpoint and ordered all the other officers where to be and what to do. In addition, a deputy who participated in the roadblock testified that Sergeant Martin is a supervisor, that Sergeant Martin initiated the roadblock and that Sergeant Martin told him and others what to do during the roadblock. This "uncontradicted testimony that [Martin] was a supervising officer authorized to order roadblocks was sufficient to establish that fact." (Citation and punctuation omitted.) *Gonzalez*, supra. See also *Giacini v. State*, 281 Ga. App. 426, 428 (1) (636 SE2d 145) (2006) (uncontradicted testimony of supervisor that he was authorized to implement roadblocks sufficient).

Nevertheless, citing *Thomas v. State*, 277 Ga. App. 88 (625 SE2d 455) (2005), Johnson argues that Sergeant Martin's hands-on participation in the roadblock rendered him a mere field officer. His reliance on *Thomas* is misplaced.

> In *Thomas*, a field patrol officer met with other police officers in a parking lot during the middle of a shift and then decided to implement a police checkpoint. Given the lack of evidence that the officer had authority to implement a roadblock, this Court found it impermissible. Here, unlike in *Thomas*, the evidence shows that [Sergeant Martin's] decision to implement the roadblock was not a spur of the moment decision and that [he] had authority to order such checkpoint.

4

(Citations omitted.) *Bennett v. State*, 283 Ga. App. 581, 583 (642 SE2d 212) (2007). Moreover, Sergeant Martin testified that he started helping out with the screening of drivers only when his deputies got too busy. Under these circumstances, "[t]he mere fact that [Sergeant Martin] participated in the roadblock . . . is insufficient to transform him from a supervisor into a field officer." (Citation omitted.) *Gonzalez*, supra at 551. Accordingly, we find that the roadblock was legal. See *Owens v. State*, 308 Ga. App. 374, 377 (1) (707 SE2d 584) (2011).

2. *Affidavit for the search warrant*.

In two enumerations, Johnson challenges the sufficiency of the affidavit submitted for the search warrant, claiming it did not establish probable cause. We disagree.

> In determining the sufficiency of a search warrant affidavit, the issuing magistrate or judge must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Our duty as a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In reviewing the lower court's decision, we give great deference to the magistrate's determination of probable cause; a presumption of validity attaches to an affidavit supporting a search warrant, and doubtful cases are resolved in favor of upholding the search warrant. The contents of the affidavit

5

are reviewed in the light most favorable to upholding the trial court's determination.

(Citation omitted.) *Sutton v. State*, ___ Ga. App. ___ (Case No. A12A2223, decided January 25, 2013).

In this case, there is no question about the basis of knowledge of the person supplying the information since the affidavit was submitted by the deputy sheriff who had participated in the roadblock and arrested Johnson. The deputy's affidavit provided that Johnson had been stopped at the roadblock that morning, that he had a very strong odor of alcohol about him, that his eyes were bloodshot, that he admitted having drunk alcohol at two different bars, and that he failed two field sobriety evaluations. Based on these circumstances, the judge who issued the search warrant had a substantial basis for concluding that probable cause existed to suspect Johnson of driving under the influence of alcohol and that evidence of such crime would be found in a sample of his blood. See *Blankenship v. State*, 301 Ga. App. 602, 604-605 (2) (b) (688 SE2d 395) (2009) (probable cause to suspect DUI where defendant had strong odor of alcohol, bloodshot eyes, admitted drinking beer and failed field sobriety tests).

3. *Seizure pursuant to the warrant.*

Johnson contends that the seizure of his blood was unlawful because the search warrant did not sufficiently limit the discretion of the executing officer and was overly broad in that it would have authorized the taking of any amount of his blood by any method and for any purpose over a ten-day period. However, even if the warrant could be so construed as authorizing an overly broad seizure, Johnson has "failed to show that any such broader seizure occurred and thus has failed to show any harm." *Jones v. State*, 313 Ga. App. 590, 594 (2) (722 SE2d 202) (2012). Rather, the record establishes that the same deputy sheriff who had arrested Johnson and obtained the search warrant then executed the warrant within three hours of the arrest, that pursuant to the warrant the deputy obtained two vials of Johnson's blood, and that those samples were tested by the GBI only for blood-alcohol concentration. Indeed, Johnson acknowledges in his brief that "we know that the officer wanted a medical blood sample from Mr. Johnson so that he could determine Johnson's blood-alcohol level." Where, as here, "a search as it was actually conducted is lawful, it is not rendered invalid merely because the warrant pursuant to which it was made was overbroad. Accordingly, the trial court did not err in denying [Johnson's] motion to suppress the results of [his] blood-alcohol-content test obtained via the seizure of

[his] blood samples and pursuant to the search warrant." (Citations and punctuation omitted.) *Jones*, supra.

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*